Reynolds, J.
Plaintiff and Thomas Warner, deceased, in April, 1872, entered into an ante-nuptial contract, by which it was agreed that in case their contemplated marriage should be consummated and she should survive him, she should receive in lieu of dower and all claims to his real and personal estate the sum of one thousand dollars, with interest from the time of his death to the time of such payment.
The parties intermarried shortly after such contract was executed, and Thomas Warner died in May, 1884, leaving a will by which he disposed of his whole real and personal estate, after the payment of debts, amongst his children. No provision was made for the payment to plaintiff of the $1000 due her under the ante-nuptial contract, unless it was included under the term “debts” which the executors were to pay. The plaintiff claims that it is not so included, and that the testator, by omitting to make provision for the performance of the contract, and so disposing of his estate as to place it beyond *155 the power of his executors to carry it out, virtually repudiated i?, and thus released the plaintiff from its obligations.
It seems to me that the word “ debts ” is broad enough to cover the plaintiff’s claim under this agreement. Webster defines “ debt ” to be “ that which is due from one person to another, whether money, goods, or services; that which one person is bound to pay or perform to another.” Stormouth also defines it as “obligation,” “liability.”
The payment of this one thousand dollars was a contract obligation, or liability resting upon the testator’s estate. It became due and owing to her by the terms which the parties had made in their agreement, and I cannot see why the executors had not the power to make the payment as they offered to do. This ground, therefore, was no sufficient answer to the agreement.
I think, however, that the case was made to turn very much upon a wrong theory. The learned judge upon the trial not only held that the burden of proof to invalidate the agreement rested upon the plaintiff, but the main consideration seems to have been whether she understood the language and legal effect of the paper which she signed. The testimony in the- case and the character of counsel who drew the paper and superintended its execution forbid the supposition that she was misled or deceived as to the language or meaning of the instrument. That is, she knew it was intended to be a release of all 1 claim to dower or thirds in the estate of her intended husband, in consideration of one thousand dollars, to be paid to her on his death, if she survived him. But to know the legal effect of the agreement was very different from knowing its practical effect. A vital inquiry was whether she was in any way fairly informed of the extent and value of the rights which she was relinquishing. • The sum which she was to receive was greatly disproportionate to what the law would have given her as widow of the man she was to marry.
Did this man, who naturally possessed her confidence and affections, apprise her of the sacrifice she was making? She possessed no property of any amount, so that his renunciation *156 of her estate amounted to nothing. There is no reason to infer that she knew anything of the amount of his possessions. She ■tells us that while she knew he 'was a butcher, she never heard •anybody say anything about liis money, or speak of his property in any way before the marriage. Her friends and relatives with whom she lived had never been consulted on the subject, but one .night when .she was out walking with her intended husband, he took her into his lawyer’s office, and then the paper, which had been prepared tinder his.direction, was read over to her, and she signed it without a word of explanation then being given except as to the contents of the paper. Jj>y this .paper, in consideration of $1000, she relinquished a dower right in real estate found to be worth about $35,000 at the time of his death,-and which is shown to have been worth more at the time of the marriage.
Her husband was more than thirty years her senior. Of course the plaintiff is under the disability of not being permitted to testify as to what did.or did not take place between her and deceased on the subject of the contract, or of his circumstances, but the drift of the evidence, as it now stands, •raises a strong presumption in my mind that she-signed the paper, not only without the opportunity of consulting her relatives, but in entire ignorance of the material circumstances bearing on the step she was taking. If this had been a bargain between two independent parties where no confidential relations existed, the law would uphold it; but, as is well said in Kline v. Kline, 57 Penn. St., 120: “ The relation of parties betrothed to each other is one of unbounded confidence, especially on the part of the woman; they are not in the same category with buyers and sellers, and are not dealing at'arm’s length.”
Judge Sharswood says: “ Surely, where a man and woman are .on the eve of marriage, and it is proposed between them, as in this instance, to enter into an ante-nuptial contract upon Ihe-subjeót of the enjoyment and disposition:of their:respect•ive.estates, it is;the duty of • each to be frank and unreserved ■in the disclosure of all circumstances materially .bearing on *157 the contemplated agreement.” This case is cited with approval in Pierce v. Pierce, 71 N. Y., 154, and Judge Miller says, referring to the above and other cases: 66 These authorities go very far in holding that the courts require strict proof of fairness when called upon to enforce an ante-nuptial contract against the wife, and especially where it is apparent that the provision made for the wife is inequitable, unjust, and unreasonably disproportionate to the means of the husband. The rule undoubtedly is, that, in such a case, every presumption is against the validity of the contract, and the burden of proof is east upon the husband, or those who represent him, in order to uphold and enforce the same as a valid and subsisting agreement.”
It is true that the proof in each of these two cases was stronger and more direct against the agreement than in the case before us, but the principles laid down have, as it seems to me, a clear application here. We do not think the defendants have met the requirements that are laid upon them in order to avail themselves of the agreement which they set up against the plaintiff.
Considerable stress seems to be laid upon the idea that the plaintiff obtained the benefits of the marriage by means of this agreement, and that it would be inequitable to allow her to repudiate the agreement after having received the benefits.
But the marriage was not contracted in consideration of the agreement; rather the agreement was made in consideration of a contemplated marriage, and it is so recited in the paper. The marriage engagement appears to have preceded the agreement, and the deceased was bound to fulfill that, whether plaintiff executed the agreement or not. If it be said that the proof is not clear that the marriage engagement was first made, it was error to exclude evidence which was offered with a view to establish that fact.
Without examining the numerous exceptions, we come to the conclusion that there should be a new trial, with costs to abide the event.
Vas Wyck, J., concurred.
*158 Note on Action to Establish a Right; and on interlocutory
Judgment on Jury Trial, with Reference to Compute Recovery.
An important case on the validity of informal agreements of this kind and the proper remedy for enforcing them is Peck v. Vandemark, 99 N. Y., 29, affirming 33 Hun, 214.
The contract there was made by correspondence; and consisted of a promise on the part of the intending husband to bequeath to the intending wife the use and profits of his entire property during her lifetime, and half of the property to be hers if she survived him. He having died leaving her a legacy of only $200, and having bequeathed the residue of his estate to relatives, she brought this action against the executor, joining the residuary legatees, and alleging that his estate was worth some $10,000.
The complaint was framed as an action for damages alleged to have been sustained by reason of the breach of the agreement; and the legatees were alleged to have been joined “in order that they may have an opportunity to protect whatever right they may have in the premises, and that they may be bound by the judgment herein, and plaintiff claims no costs against themand the demand of' judgment was only against the executor for a specified sum with interest.
It was objected on the trial that the action was premature because the estate had not been adjusted and the debts not ascertained.
No objection was made specifically on the ground that relief should be sought in equity.
The plaintiff was nonsuited on the ground that the action was premature.
The Supreme Court held that this was error. Hardin J„ delivering the opinion of the court, says: “By omitting to demur, the devisees and legatees have waived any"objection to their being joined with the executor. It is not needful to hold in this case that the plaintiff would not in equity be entitled to relief. All distinction between law and equity has been abolished by the Code, and a party who comes to this court with a case containing facts showing a right to a recovery either at law or in equity, is entitled to such relief as exact justice requires. We see no occasion to stop to consider whether this action could not be upheld according to the principles of equity jurisdiction.”
In respect to the objection that the action was premature, he adds: “It was within the power of the court to allow a recovery predicated upon the value of one-half of the property left by the deceased, and the value of one-half of the use of the other half for the lifetime of the *159 plaintiS, and then to have ordered a reference to ascertain the extent of the debts of the testator, and the expenses of settling his estate. Or the judgment establishing the right of recovery could have reserved the question of the amount of recovery, to be settled and ascertained after the final decree of the surrogate in the premises. The judgment sought here would thus be made to bind the assets only. (Code Civ. Pro. §§1371, 1824, 1825, 1826.)
The Court of Appeals affirmed this decision, Eabl, J., delivering the opinion of the court, saying : “If the exact amount of the testator’s property could not at the time of the trial have been ascertained, the rights of the plaintiff could have been settled and determined by an interlocutory judgment and a reference ordered to take the accounting of the executor. The hearing upon such a reference could, if necessary, have been postponed until a final settlement of the executor’s accounts before the surrogate. The form of this action furnishes no obstacle to such a method of disposing of the case. The facts are stated in the complaint and answer; they were proved upon the trial, and the court then and there had all the powers in law and equity needed to administer justice between the parties. If in consequence of our decision it becomes necessary to assess the plaintiff’s damages, such assessment may be postponed to give the executor sufficient time, if he needs it, to settle his accounts before the surrogate.”
First. This case, like some others previously decided in our courts, seems to recognize a principle not favored by the earlier decisions here, but fully enforced by the English courts, that an action may lie to have one’s rights declared when necessary for their preservation and future enforcement.
The leading case is Cohen v. N. Y. Mutual Life Ins. Co., 50 N. Y., 610, s. c., 10 Am. R., 522.
, See also, for other instances, Hayner v. Am. Popular Life Ins. Co., 36 Super. Ct., (J. & S.), 211, affirmed without opinion in 62 N. Y., 620 (Action to establish an unexpired life policy).
| Magauran v. Tiffany, 62 How. Pr. 251 (action to establish the ex-iistence of a trust or equitable right of ownership, irrespective of right to accounting, &c.).
Second. It also sanctions the principle that even in an action of a legal nature, matters occurring after action brought, if they go not to the cause of action but to the measure of relief, may be proved.
Third. That an objection founded on the distinction between legal and equitable actions cannot avail, after trial of the issues, where the facts entitling the plaintiff to relief in either form are alleged and *160 brought before the court in evidence, unless the objection was specifically made at or before trial in the court of - first instance.
And, fourth, that in an action for damages tried before a jury the court may leave it to the- jury to. determine the question of right, and order a reference in furtherance of justice, a course not heretofore supposed to have had authoritative sanction under the: Codes of Procedure, See Abb. Tr. Brief, 132, ¶ 28, and cases cited.