(20 App. Div. 560.)

WHITE v. WHITE.

(Supreme Court, Appellate Division, Second Department.    October 5, 1897.)

1. ACTIONS—FORM—WHEN DISREGARDED.
    Where a cause of action exists in equity against the holder of the legal
    title to lands, to compel him to specifically perform an antenuptial agree-
    ment by conveying the same to plaintiff, and the action as brought, while
    in the form of an action in ejectment, is tried at special term without a
    jury, like an equity action, and no objection is raised at the trial, and the
    relief granted is substantially the same as a decree compelling specific per-
    formance, the court, on appeal, may ignore the distinction between the legal
    and equitable forms of action, and sustain the judgment.

2. ANTENUPTIAL AGREEMENTS—ENFORCEMENT IN EQUITY.
    To effectuate the intention of the parties to an antenuptial agreement, a
    court of equity may decree specific performance.

3. ADVERSE POSSESSION—EVIDENCE—SUFFICIENCY.
    Plaintiff was an infant. Defendant, his father, was in possession of real
    property, claiming a life estate as tenant by the curtesy. It was claimed
    by plaintiff's guardian that by virtue of an antenuptial agreement defend-
    ant had no such right, and he wrote a letter to defendant, demanding pos-
    session. To this defendant made no reply. Held, that a finding that he un-
    lawfully withheld possession was warranted.

4. ANTENUPTIAL AGREEMENTS—WHO MAY ENFORCE.
    An antenuptial contract, made for the benefit of any person to whom the
    woman's property may pass by devise or descent, may be enforced, after
    her death intestate, by her only child; the rule of privity through legal
    obligation having no application.

Appeal from special term, Kings county.

Action by Frederick Hall White, an infant, by Frederick T. Ald-
ridge, his guardian ad litem, against Josiah J. White.    From a judg-
ment for plaintiff, defendant appeals.    Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and BRADLEY, JJ.

Josiah T. Marean, for appellant.

George S. Ingraham, for respondent.

WILLARD BARTLETT, J.    The plaintiff in this action is a lad
13 years of age, who lives with his father, the defendant, at No. 136

Columbia Heights, in the city of Brooklyn. The house in which they live formerly belonged to Eliza T. White, the wife of the defendant, and the mother of the plaintiff. Mrs. White died, intestate, on the 23d day of October, 1891, seised and possessed of the premises, and leaving the plaintiff her only child and heir at law. The father, however, claims to be entitled to the possession of the property during his own lifetime, as tenant by the curtesy; and the present litigation was instituted at the instance of the Long Island Loan & Trust Company, as guardian of the plaintiff's estate, to determine the validity of the defendant's claim in this respect. The guardian insists that the defendant, by virtue of an antenuptial agreement with the plaintiff's mother, deprived himself of all right to any interest in the property as tenant by the curtesy, and that the infant's willingness to have his father remain in possession does not affect the right or duty of the guardian to recover the real estate of the ward. The antenuptial agreement upon which the plaintiff relies was executed in Connecticut, on the 27th day of June, 1876, between Josiah J. White and Eliza T. Hall. It recites the ownership by the said Eliza T. Hall of certain real property situated in the states of Connecticut, Wisconsin, and New York, and declares in behalf of the said Josiah J. White that, in case of the death of Eliza T. Hall while she is his wife, he "will not claim to have or pretend to have any right or interest in or to any part of her said estate, or of said income, but will permit the same to pass by her will to her devisee, or by descent to her heirs at law, as the same would pass if she had remained single and unmarried." In form, the suit is an action of ejectment. The complaint alleges the appointment of the guardian ad litem; the ownership of the premises No. 136 Columbia Heights by Eliza T. Hall at the time of the execution of the antenuptial agreement; the execution of said agreement; the subsequent marriage of the parties thereto; the birth of the plaintiff, and the death of his mother; the appointment of the Long Island Loan & Trust Company as guardian of the plaintiff's property and estate; and, finally, the possession of the premises by the defendant, and the unlawful withholding of the same. Judgment is demanded "for the recovery of said property in fee simple, and for the possession thereof, and the costs of this action." In the answer, the defendant "denies that plaintiff has an estate in fee simple in the premises described in the complaint, except in reversion after the life of this defendant, and denies that plaintiff is entitled to the possession thereof, and also alleges that the defendant is seised of an estate for his own life in said premises, and is entitled to the possession thereof." The defendant further denies that he unlawfully withholds the possession of said premises from the plaintiff. Upon the issues thus presented, the parties went to trial before one of the justices of the supreme court at special term, without a jury. It was proved that on March 31, 1897, the Long Island Loan & Trust Company, as guardian of the plaintiff's estate, sent a letter to the defendant, which was received by him, demanding that he surrender the house No. 136 Columbia Heights, then occupied by him, into the possession of the said company, as such guardian. The defendant made no reply to this communication. It appeared that, just after the mar-

riage of Mr. and Mrs. White, they came to the state of New York, and resided here until the time of Mrs. White's death; that, when Mrs. White died, she and her husband and son were living in the house No. 136 Columbia Heights; and that the father and son have continued to live there ever since, and at the time of the trial were living there together, as members of the same family. The plaintiff was called as a witness, and testified that he did not wish to live anywhere else; that he did not want his father removed from the house; and that the suit was brought without his consent. The learned trial judge took the case under advisement, and subsequently made findings in substantial accordance with the allegations of the complaint, upon which judgment was entered, declaring the plaintiff to be the owner of the premises, and entitled to the possession thereof, and adjudging that he recover such possession from the defendant, together with his costs.

Treating the suit as an action of ejectment, the learned counsel for the appellant insists that the complaint should have been dismissed by reason of the failure of the plaintiff to establish any legal title in himself. According to his argument, the utmost force that can be given to the defendant's antenuptial covenant is that of a mere promise, which a court of equity might specifically enforce, or for the breach of which a court of law might award damages. As I understand the appellant's contention in this respect, it is that the agreement could not operate ipso facto to change the law of the state so far as Mrs. White's lands were concerned, and deprive her surviving husband of his tenancy by the curtesy; but, if he loses that right at all, it must be by virtue of some proceeding in equity to enforce the promise which he made to his wife before their marriage. It would seem that the counsel who drew the complaint intended to sue in ejectment, and, in the statement of facts which precedes the special term opinion, the action is expressly denominated an "action of ejectment." The case was tried, however, at special term, without a jury, just as equity suits are always tried, and there is nothing in the record to indicate that the point now made was brought to the attention of the trial court. If the objection is a good one, it will compel us to order a new trial merely because the plaintiff has made the mistake of suing at law instead of suing in equity; for it is perfectly clear, under the authorities, that equity can afford the desired relief, and ultimately give to him or his guardian the possession of the property.

The equitable power of the supreme court in the enforcement of antenuptial contracts is very fully considered in the case of Johnston v. Spicer, 107 N. Y. 185, 13 N. E. 753, and it is there said that:

"If the contract is fair and reasonable, and such as it is lawful for the parties to make, and the rights of creditors or third persons have not intervened, it will be enforced in equity in such a manner as to accomplish the object which the parties had in view, without reference to the validity of the agreement at law."

Under our statutes, however, there is no doubt as to the validity of antenuptial contracts. This was declared by the original act for the more effectual protection of the property of married women

(Laws 1848, c. 200), and is reiterated in the existing domestic relations law (Laws 1896, c. 272, § 23).

To effectuate the intention of the parties to an antenuptial agreement, a court of equity will vary the relief granted according to the exigencies of the case, and may declare a trust or decree specific performance, or even award money damages when strictly equitable relief is impracticable. The extent to which a court of equity will go in this respect is aptly illustrated by the case of Neves v. Scott, 9 How. 196. The suit was instituted by a bill in equity in the circuit court of the United States for the district of Georgia. Its purpose was to enforce an antenuptial contract for the division of the common property of the parties to the marriage, the plaintiffs claiming to be entitled to a moiety of said property under the agreement. The bill "charged waste, and prayed for a discovery and decree that the complainants might be put into possession of one-half of all the property which was owned by John Neves and Catharine Neves." The defendants demurred, and their demurrer was sustained in the circuit court; but on appeal to the supreme court of the United States the decree was reversed, and it was held that inasmuch as the complainants were the beneficial owners, and vested with the equitable title, by virtue of the marriage settlement, a court of equity would interpose, if need be, to compel a trustee of the estate to vest them with the legal title. The important feature of this case, however, in its bearing upon the case at bar, is that it was in its essential nature a possessory suit. What the complainants sought was the possession of certain real property. This appears not only from the statement of the contents of the bill, already quoted, but also from the opinion of Mr. Justice Nelson, in which he says:

"The bill was filed by the complainants in the court below to obtain the possession of the undivided half of an estate embraced in a marriage settlement between John Neves and Catharine Jewell, entered into in contemplation of marriage, and which shortly afterwards took place."

Now, it seems to me that, if an equitable cause of action was stated in Neves v. Scott, it is equally possible to hold that an equitable cause of action is stated in the complaint before us. All the facts are set out which are necessary to constitute such a cause of action. The case was tried in that branch of the court in which equity causes are cognizable; and the relief granted was substantially the same thing as a decree compelling the defendant specifically to perform his contract. This is a case in which it is peculiarly appropriate that we should ignore the distinction between legal and equitable forms of action, inasmuch as there is no real difference as to the issues to be tried, the tribunal by which they are to be determined, or the substantial relief to be granted.

There are two other points in the brief for the appellant which require notice. The answer denies that the defendant unlawfully withholds the premises from the plaintiff; and it is insisted that the failure of the defendant to answer the letter from the guardian demanding possession did not give an adverse character to his occupation. I think the neglect to answer the letter is sufficient to sus-

tain the findings of unlawful possession, when the defendant's silence is considered.

It is furthermore argued that the plaintiff is not in a position to enforce the antenuptial promise of the defendant, because such promise was not beneficial to the wife, and she was under no obligation to the plaintiff to secure to him her entire estate, free from her husband's right of curtesy. As to this point, the learned trial judge correctly held that the rule of privity through legal obligation does not apply to antenuptial contracts or agreements of a similar nature. King v. Whitely, 10 Paige, 465; Todd v. Weber, 95 N. Y. 181. The antenuptial contract in the case at bar must be regarded as having been made for the benefit of any person to whom Mrs. White's property might pass by devise or descent. As she died intestate, it was made for the benefit of the plaintiff, as her sole heir at law; and, under the case last cited, he was clearly entitled to enforce the agreement.

The judgment should be affirmed, with costs. All concur.