---

(67 App. Div. 176.)

## In re MAHLSTEDT'S ESTATE.

(Supreme Court, Appellate Division, Second Department. December 23, 1901.)

TRANSFER TAX—TRANSFER IN CONTEMPLATION OF DEATH.

Taxable Transfer Law, § 220, subd. 3, as amended by Laws 1897, c. 284, provides for a tax on a transfer of property made in contemplation of the grantor's death, or to take effect after death. Decedent, at the time of his last illness, owned a majority of the stock in a corporation of which he was president; and, having been told by his physician that when he recovered he would have to take a long vacation, transferred the stock to his wife, so that she might transact the business in his place. He retained one share, so as to have a right to vote at its meetings. At the same time he made a will, the wife being the sole beneficiary. The transfer was absolute on its face, and the wife immediately proceeded to take part in the company's affairs. Decedent died about three weeks later. The bookkeeper testified that decedent said he was going to assign the stock, and then he could go on a vacation. Held, that the transfer was not made in contemplation of death, within the statute, and was not taxable thereunder.

Jenks, J., dissenting.

Appeal from surrogate's court, Westchester ·county.

Proceedings to assess the transfer tax against the estate of J. Albert Mahlstedt, deceased. From a decree of the surrogate's court, affirming the transfer tax decree entered against the estate, Margaret L. Mahlstedt, wife of the decedent, appeals. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, JENKS, HIRSCHBERG, and SEWELL, JJ.

J. Addison Young, for appellant.
Joseph W. Middlebrook, for respondent.

WOODWARD, J. On the 20th day of April, 1899, J. Albert Mahlstedt died, leaving a last will and testament, which was duly admitted to probate, disposing of all of his property to his wife, Margaret L. Mahlstedt. His last illness began in February, 1899. At the time of his illness, and for some years prior thereto, he had been the president of a corporation known as the J. A. Mahlstedt Lumber & Coal Company, and on the 29th day of March, 1899, was the owner of 560 of the 750 shares of stock of the said corporation. Up to the date last above mentioned, Mr. Mahlstedt had continued to sign all of the notes, drafts, checks, and other papers in the transaction of the business of the corporation; but, this duty becoming burdensome, and he having been told by his physician that when he recovered he would have to take a long vacation, he expressed a desire that he might transfer his stock to his wife, so that she. could become a member of the company at once, and transact the business in his place. In pursuance of this desire, and on the 29th day of March, 1899, Mr. Mahlstedt transferred to Margaret L. Mahlstedt 559 shares of the stock above mentioned, retaining one share so that he might continue to be a member of the company and have a right to vote at its meetings. The present controversy grows out of the fact that the appraiser appointed to determine the amount of the estate of the late Mr. Mahlstedt included this stock in the appraisal, holding that the transfer to Margaret L. Mahlstedt on the 29th day of March, 1899, was made in contemplation of death, or to take effect after death, thus bringing it within the provisions of subdivision 3 of section 220 of the taxable transfer law, as amended by chapter 284 of the Laws of 1897. Subdivision 3 provides that a tax shall be imposed upon the transfer of property, "when the transfer is of property made by a resident or by a nonresident when such nonresident's property is within this state, by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death"; and the question presented upon this appeal is whether the facts justify the conclusion reached by the appraiser, and confirmed by the learned surrogate, that "this transfer was made in contemplation of death, or to take effect after death, and it is therefore taxable."

Passing over the technical objection that there is no determination whether the transfer was made in contemplation of death, or to take effect after death, thus leaving the essential fact involved to specula-

tion, we are of opinion that the facts do not justify holding either that the transfer was made in contemplation of death, or to take effect after death. On the same day that Mr. Mahlstedt made this transfer of stocks to his wife, he made a will, in which Margaret L. Mahlstedt was made the sole beneficiary, and it is illogical to say that this man, contemplating his death, reserved a single share of the 560 shares of stock of which he was the owner. He was ill. His physician had assured him that, upon his recovery, it would be necessary for him to take a long vacation; and, as it was his intention that his wife should be the sole beneficiary under his will, the transfer of the stock, so that his wife might take his place in the board of directors, and give her attention to the business, was an entirely natural disposition of his property. The stock was assigned in writing, and was absolute upon its face. Mrs. Mahlstedt accepted the same, and at once assumed dominion over the property by taking part in the affairs of the company. There is some suggestion that there was irregularity in the corporate meetings held after the transfer, and in which Mrs. Mahlstedt took part; but this is of no importance in this connection, as no rights of the public or of individuals are involved, and it in no wise impeaches the good faith of the transaction that it was not regular in form. The business had been conducted in the form of a corporation, though evidently largely a family affair, and we have no concern with the question of regularity in the holding of such corporate meetings, where no interests other than those of the immediate parties are involved, and where those are not in controversy. It may be that the transfer of the property was made in contemplation of death, in the sense that many men who have accumulated property make some disposition of it in contemplation of the fact that they must die at some time; but the fact that Mr. Mahlstedt retained one share of the stock, which could be of no possible use to him as property if he was about to die, and which would pass by the will he had just executed to his wife, seems to us strong evidence that he did not believe that he was going to die of his present illness, but that he expected to live and wanted to retain his right to vote in the corporation, perhaps as a mere matter of sentiment. The fact that he did die within about three weeks of the transfer, and that he died of the same illness with which he was afflicted at the time, has no bearing upon the question. The only point to be determined is whether the transfer was made in the then belief that he was not going to get well; that it was made in contemplation of his impending death, and for the purpose of defrauding the state of the transfer tax; for that is the essence of the matter, and there is no presumption that a man intends to commit a fraud of any kind. Chamberlayne's Best Ev. § 308, and authorities there cited. The rule is also well settled that, where two inferences may be drawn from a given state of facts, one of which is lawful and the other unlawful, the result which is consistent with innocence is to prevail. Chamberlayne's Best Ev. § 326. See, also, section 334. Looking at the facts in this case in the light of these rules, we are led irresistibly to the conclusion that they do not warrant holding that the transfer of the 559 shares of stock was made in contemplation of death, in the sense in which that

phrase is used in the statute.  Mr. Mahlstedt had a natural right to give this stock to his wife; it was an entirely lawful transaction, and the manner in which it was performed, the circumstances surrounding him, and the acts of Margaret L. Mahlstedt after becoming the owner of the stock, all indicate that the transfer was made for the purpose of relieving Mr. Mahlstedt from the cares of business, and transferring those duties upon the wife.  The evidence is undisputed that Mrs. Mahlstedt has appeared at all of the meetings of the corporation since the transfer of the stock to her; that no objection has ever been made to her voting the stock; that she acted as treasurer from the time of her election; that she signed drafts that day, or the next after her election; and this, in connection with the fact that her husband retained one share of the stock, indicates clearly that the transaction was in good faith, and that it was not made in contemplation of death.  This conclusion is supported by the testimony of George W. Mahlstedt, a brother of the deceased, who became president of the corporation after the transfer of the stock to Mrs. Mahlstedt.  He says, and the statement is not challenged in any manner:  "My brother transferred no personal property to any one in contemplation of death."  Frederick W. Bender, the bookkeeper, testifies:

"He told me at the time (the time not being fixed) he would assign the stock over to his wife, and let her transact the business, and then, when he recovered, he could go on his vacation.  He gave me instructions to have papers prepared to assign stock,—to see Mr. Young and have transfer of stock made to his wife; he told me to assign 559 shares to his wife; that he wanted to retain this one share, so that he would be a member of the company and vote at the meetings; and he told me to go to Mr. Young and have the business transacted."

There is no evidence of an intention on the part of Mr. Mahlstedt to transfer this property for the purpose of defeating the transfer tax.  It is undisputed that he retained a share of the stock on purpose to hold a position in the company, a thing entirely inconsistent with the theory that he contemplated his own death in the transaction, while his talk about going on a vacation at the very time that he gave the instructions for the transfer, coupled with his declaration that it would enable his wife to transact the business, furnishes affirmative evidence that his own death was not in mind in making the transfer.  The fact that he made a will on the same day is not evidence of the contemplation of death, except as a remote contingency, and cannot overcome the legitimate presumptions and the positive evidence in support of the appellant's theory that the transfer was made for the purpose of vesting the property in his wife, so that she should be able to take his place in the management of the business.

The order appealed from should be reversed, with costs.

GOODRICH, P. J., and SEWELL, J., concur.  HIRSCHBERG, J., not voting.

JENKS, J.  I dissent.  When Mr. Mahlstedt made the assignment he lay upon his sick bed, so ill that his physician was calling upon him eight times a day, was attending throughout the nights,

and had called in Dr. Janeway for consultation. After the physician had advised the patient "to put his worldly affairs in order," the patient sent for his attorney, who was permitted by the physician to see the client. Thereafter, and upon the same day, Mr. Mahl-stedt executed his will, making his wife the sole beneficiary, and made the assignment to her of 559 shares of stock out of his hold-ings of 560 shares. At this time Mr. Mahlstedt was so weak that, though he subscribed his will, it was suggested that he could make his mark to the assignment, and he did so. Three weeks there-after the illness ended in death. After execution, both will and as-signment were given to a brother of Mr. Mahlstedt, who, under instructions, placed them in Mr. Mahlstedt's safe in the house, where they remained until after Mr. Mahlstedt's death. There is testi-mony that they were "delivered" to the wife. It is hardly to be ex-pected that in transactions of this character positive proof can be given that the transaction was within the purview of the statute. The taxing power is not party to the transaction, and it is almost necessarily compelled to rely upon the attendant facts, and circum-stances which it may subsequently elicit, and the conclusions that may fairly be drawn therefrom. I think that the considerations discussed in the prevailing opinion are not sufficient to shake the conclusion that the act was within the purview of the statute, and that the decree should be affirmed. It is entirely true that, but for the execution of the assignment, the stock would have passed to Mrs. Mahlstedt (the assignee) as sole legatee under the will. But in that event the stock, being worth by the inventory $56,000, would have been subject to a tax. Chapter 458, Laws 1901. On the other hand, if it could be made to appear that the assignment was not made in contemplation of death, or was not intended to take effect until after death, then the stock escaped the tax. May not this consideration have suggested the policy of an assignment? If the assignor intended to avoid a tax, was it not natural that he should seek to color the transaction with the appearance of an act neither done in contemplation of death nor intended to take effect after death? If this were the purpose, might not the retention of a single share afford, as it has afforded, an argument that the assignor, in retaining an interest, infinitesimal though it might be, did not contemplate death? So far as Mr. Mahlstedt's statements are con-cerned, though his clerk testifies that Mr. Mahlstedt said to him that his physician had advised that he should go on a vacation, I cannot find that the physician confirmed this statement, or that he testified that he gave other advice than that the patient "should put his worldly affairs in order." As to the acceptance of the as-signment by Mrs. Mahlstedt, and her domination over the property of the corporation, it appears that her brother-in-law, an officer of the corporation, testified that the transfer of the stock was made upon the corporate books prior to the death of the assignor. He produced the only stock book kept by the company, and testified that the certificates and stubs were the only different records of the company of the issuing and transfer of stock. Now the indorse-ments on the stubs showed that the stock was transferred by as-

signment dated March 29, 1899, dated this 26th day of May, 1899, and the witness testified that the indorsements represented the time of the transfer on the books of the company; that he was advised to pin the assignment and a request for transfer on the books; but that no demand for transfer on the books was made until after Mr. Mahlstedt's death. It does appear that there was a meeting of the corporation on April 5th, when it was recited in the minutes that "a majority of the stock was represented," whereat Mrs. Mahlstedt nominated her brother-in-law for president, who thereupon nominated her for treasurer in his place. The addenda to the minutes read that Mrs. Mahlstedt was elected by the vote of Mr. George Mahlstedt at the above special meeting, "he acting alone, owing to the absence of A. Mahlstedt, who was confined to his house through illness," and that the meeting could not be delayed owing to the fact that president Mahlstedt was too ill to sign checks, and the interests of the company were jeopardized thereby. It is clear that the business was a close family corporation, and that there was none to challenge or question any act of Mrs. Mahlstedt in the premises. But her assertion of a right to act, or her action in the routine business of this family concern, acquiesced in by her family, when there was none other to question it, does not go far, in my opinion, to establish a title to the stock in Mrs. Mahlstedt, so as to shut out the application of the statute. I do not give any weight to the testimony of Mr. George W. Mahlstedt that his brother "transferred no property in contemplation of death." He cannot speak as to his brother's intent. His opinion upon the subject is not competent, and his thoughts upon the matter are not evidence.