---

### In re BAKER'S ESTATE.

(Supreme Court, Appellate Division, Fourth Department. May 5, 1903.)

**1. TRANSFER TAX—PROPERTY SUBJECT.**

An antenuptial agreement provided for the payment to the intended wife on or before the marriage of a specified sum, and a provision by will for the payment of $20,000, in the event that the wife survived, in lieu of dower and other rights. The marriage occurred, and in about a year and a half the husband died intestate, leaving his wife surviving. She accepted a life policy in part satisfaction of the agreement, and received the balance from the estate. *Held*, that the agreement did not constitute a gift to the wife in contemplation of the donor's death, and therefore the sum received by the wife from his estate was not subject to the transfer tax imposed by the general tax law (Laws 1897, p. 150, c. 284, § 220, subd. 3), though the agreement was not intended to take effect until after the husband's death, where it was not shown that it was entered into in bad faith and with the intent to evade the law.

Appeal from Surrogate's Court, Monroe County.

In the matter of the estate of Henry B. Baker, deceased. From a decree of the Surrogate's Court exempting certain property from the transfer tax, the State Comptroller appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

On the 11th day of January, 1900, the respondent, whose maiden name was Dora H. Johnson, was married to the decedent, Henry B. Baker. Prior to such marriage, and on the 24th day of November, 1899, the parties entered into an antenuptial contract in writing, by the terms of which the decedent, in consideration of such contemplated marriage, agreed to give to his intended wife the sum of $1,000 on or before the date of their marriage, and, in the event that the marriage was consummated and his wife should survive him, to make provision by his last will and testament for the payment to her from his estate of the further sum of $20,000; the respondent upon her part agreeing that, in consideration of the foregoing provisions and the payment to her of the sum of $500 upon the execution of the contract, she would accept the same in lieu of her dower rights in the decedent's estate, and all other rights as his widow, and that she would, upon request, quitclaim to him or his heirs any such interest that she might have in property which he then owned or might subsequently acquire. Mr. Baker died intestate on the 25th day of July, 1901, leaving him surviving this respondent, his widow, and a sister, who was his only heir at law and next of kin. By an arrangement entered into between these two parties, the respondent accepted the avails of a $10,000 policy of life insurance upon the life of the decedent, which had been transferred to her by the latter prior to his death, in part satisfaction of the amount due her upon her contract; and the remaining sum of $10,000, with interest thereon, was subsequently paid to her from the estate. This latter sum, it was claimed by the State Comptroller,

was subject to a transfer tax, and such proceedings were thereupon had that it was finally and duly determined by the surrogate· of Monroe county that the same was exempt from taxation under the provisions of article 10, c. 24, of the General Laws, known as the "Taxable Transfer Act," and from such determination this appeal is brought.

William T. Plumb, for appellant.
Charles M. Williams, for respondent.

ADAMS, P. J.    It is conceded that the decedent was a resident of this state, and the only question involved in this appeal is the construction to be given to subdivision 3, § 220, General Tax Law (Laws 1897, p. 150, c. 284), which provides for the imposition of a transfer tax, "when the transfer is of property made by a resident   *   *   * by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death."

It will doubtless be conceded that the respondent's claim is not one which is dependent for its validity upon a deed or grant of any kind, and, furthermore, that it is not testamentary in its character, although it did not become due and payable until after the death of her husband.    It was simply the outgrowth of a contract entered into between the decedent and the claimant, which was founded upon a perfectly good and valuable consideration, and one which is regarded with favor by the law, and will generally be enforced in accordance with the intention of the parties.    Johnston v. Spicer, 107 N. Y. 185, 13 N. E. 753;  Peck v. Vandemark, 99 N. Y. 29, 1 N. E. 41; White v. White, 20 App. Div. 560, 47 N. Y. Supp. 273.    It would seem to follow, therefore, that a claim arising from such a source is in the nature of a debt against the estate, and as such enforceable like any other debt (Hegeman v. Moon, 131 N. Y. 462, 30 N. E. 487;  Warner v. Warner, 18 Abb. N. C. 151); and if this is its character we do not see why it should be subject to taxation under the transfer tax law, any more than if it were a debt represented by a bond or note.

The tax imposed by the statute in question is a tax on the right of succession, and not on the property itself (Matter of Dow's Estate, 167 N. Y. 227, 60 N. E. 439, 52 L. R. A. 433, 88 Am. St. Rep. 508), "and a payment of an obligation dependent upon a valuable consideration is not a succession in any sense."    Opinion of Goodrich, P. J., in Matter of Miller's Estate, 77 App. Div. 473–481, 78 N. Y. Supp. 930, 934.

But it is said that the contract was entered into in contemplation of, and was not "intended to take effect in possession or enjoyment" until after, the death of the obligor.    This, in a certain sense, is doubtless true, as it would be of any other form of debt the payment of which was deferred until after the death of the debtor, but this does not affect its validity nor alter its character.    Hegeman v. Moon, supra.    Neither, in our opinion, does it subject the debt to taxation under the act in question, unless it can be shown that the agreement was entered into in bad faith and with some evasive intent. Matter of Bullard's Estate, 76 App. Div. 207, 78 N. Y. Supp. 491, citing with approval Matter of Spaulding's Estate, 49 App. Div. 541, 63 N. Y. Supp. 694.    This court has held that the words "in contem-

plation of death" do not refer to that general expectation which every mortal entertains, but rather the apprehension which arises from some existing condition of body or some impending peril (Matter of Spaulding's Estate, supra, affirmed 163 N. Y. 607, 57 N. E. 1124); and this we believe is now the generally accepted definition of the phrase. Matter of Seaman's Estate, 147 N. Y. 69–77, 41 N. E. 401; Matter of Mahlstedt's Estate, 67 App. Div. 176–178, 73 N. Y. Supp. 818.

There is nothing in the case under discussion to lead us to suppose that the antenuptial contract to which reference has been made was entered into with any design to evade the law, or that its provisions for the benefit of the respondent were made in contemplation of death, within the meaning of that term as we understand and have defined it. The decedent was not ill at the time it was executed, and, for aught that appears, he expected to enjoy the matrimonial relation, in which he was about to enter, for many years. His obligation, therefore, as was said in Matter of Miller's Estate, supra, was entered into "in the expectation of life" rather than of death. Such being the clearly established intent of the parties, it necessarily follows, in our interpretation of the scope and meaning of the act, that the decision of the learned surrogate is correct, and should be affirmed.

Decree of Surrogate's Court affirmed, with costs. All concur.