In the Matter of the Transfer Tax upon the Estate of ALFRED GWYNNE VANDERBILT, Deceased.

THE COMPTROLLER OF THE STATE OF NEW YORK, Appellant; FREDERICK L. MERRIAM and Others, as Executors, etc., Respondents.

First Department, November 8, 1918.

**Taxes — taxable transfers — exemptions — testamentary performance of ante-nuptial contract.**

Where a testator makes a bequest to his wife, in fulfillment of a valid ante-nuptial agreement which could have been enforced against his estate had there been no will, and the transfer is not a bounty or benefaction, but is for a valuable consideration, in satisfaction of an agreement not made in contemplation of death, it is not subject to a transfer tax.

APPEAL by the Comptroller of the State of New York from an order of the Surrogate's Court of the county of New York, entered in the office of the clerk of said Surrogate's Court on the 28th day of February, 1918, affirming an order fixing the transfer tax herein.

*Schuyler C. Carlton* of counsel [*Lafayette B. Gleason,* attorney], for the appellant.

*Roy C. Gasser* of counsel [*Henry B. Anderson* with him on the brief], for the respondents.

PAGE, J.:

Alfred Gwynne Vanderbilt, on the 15th day of December, 1911, entered into an ante-nuptial agreement with Margaret Emerson McKim which, among other things, provided:

" *Second.* (A) That the said Alfred Gwynne Vanderbilt
by last Will and Testament or other instrument to take effect
and become operative immediately upon his death will give
and bequeath or will assign, transfer and set over or cause to
be assigned, transferred and set over to the said Margaret
Emerson McKim provided she shall survive him the sum of
Two million dollars ($2,000,000) or securities of the then
market value of Two million dollars ($2,000,000) clear of all
death duties and all other charges or deductions whatsoever to
be paid over to her as soon after his death as may be practicable
and convenient in the administration of his estate and in any
case not later than the expiration of eighteen calendar months
after his death with interest from his death to the date of
payment at the rate of five per cent. per annum, or, in his
discretion, at any time during his life will pay, assign, transfer
and set over, or cause to be paid, assigned, transferred and
set over to the said Margaret Emerson McKim, the sum of
Two million dollars ($2,000,000), or securities of the then
market value of Two million dollars ($2,000,000) clear of all
duties, charges and deductions as aforesaid.    (B) That as a
separate covenant the said Alfred Gwynne Vanderbilt agrees
with the said Margaret Emerson .McKim that provided she
shall survive him, his executors, or administrators shall,
within eighteen calendar months after his death, pay to her
the said sum of Two million dollars ($2,000,000) clear of all
duties, charges and deductions as aforesaid, with interest at
the rate aforesaid from the date of his death; it being expressly
understood, however, (1) that all sums of money, interest
and securities that shall be paid, assigned, transferred or set
over to the said Margaret Emerson McKim either in the life-
time of the said Alfred Gwynne Vanderbilt or under any testa-
mentary or other disposition of his in pursuance of the pro-
visions of the preceding Clause (A) of this Article shall be
accepted by the said Margaret Emerson McKim in or towards
the satisfaction of the said sum and interest otherwise to be
paid under this Clause (B) of this Article, any such securities
being taken at their market value as aforesaid; and (2) like-
wise that all sums of money that shall be paid over to the
said Margaret Emerson McKim by the executors or adminis-
trators of the said Alfred Gwynne Vanderbilt in pursuance of

the provisions of this, Clause (B) of this Article, shall be accepted by the said Margaret Emerson McKim in or towards the satisfaction of the said sum or securities and interest otherwise to be given, bequeathed, assigned, transferred or set over in pursuance of the provisions of Clause (A) of this Article, the purpose of the parties being to provide hereby for the payment, assignment or transfer by the said Alfred Gwynne Vanderbilt, his heirs, executors, administrators or assigns to the said Margaret Emerson McKim of the said sum of Two million dollars ($2,000,000) or securities of the value of Two million dollars ($2,000,000) and interest as aforesaid and no more. (C) And that the said sum of Two million dollars ($2,000,000) or in the alternative said securities of the market value of Two million dollars ($2,000,000) as aforesaid and interest shall be so given, bequeathed, assigned, transferred, set over or paid to the said Margaret Emerson McKim as a pecuniary provision for her in lieu and in bar of any and all right or claim of dower in and to any and all of the lands, tenements and hereditaments of the said Alfred Gwynne Vanderbilt wheresoever the same may be located, to which she might be or become entitled but for the execution of this agreement and the performance by him, his executors, administrators or assigns of his covenants herein, and also in lieu and wholly in discharge, satisfaction and payment of any and all other right, claim, title or interest of any nature or character in and to any and all of his lands, tenements and hereditaments, wheresoever the same may be located, and also of any and all right, claim, title or interest of any nature or character in and to any and all of his personal estate wheresoever the same may be situated, to which she, as his widow, might be or become entitled but for the execution and delivery of this agreement and the performance by him, his heirs, executors, administrators or assigns of his covenants herein."

The 3d paragraph of the agreement provided that Margaret Emerson McKim assents to the provision in lieu of dower and any claim on real and personal property she might have as widow, and that immediately on receipt of the $2,000,000 or of securities of the then market value of $2,000,000 and interest, she will execute any instruments to waive her rights.

The 4th paragraph provides that nothing therein con-

tained shall in any manner bar or affect the right of said Margaret Emerson McKim to claim and receive any property of any nature or character that Alfred Gwynne Vanderbilt by last will and testament or other testamentary disposition or by any instrument executed or any act done during his life may give, devise or bequeath, or transfer, assign or set over to her in addition to the provision therein made for the purpose thereinbefore expressed.

The 5th paragraph provides that the agreement shall only become effective if the contemplated marriage is solemnized.

The 6th paragraph provides that the agreement shall become binding upon the heirs, executors, administrators and assigns of the respective parties thereto. The parties to the said agreement thereafter intermarried. Alfred Gwynne Vanderbilt on the 7th day· of May, 1915, died upon the *Lusitania*, a victim of a German submarine, leaving a last will and testament which was duly admitted to probate, and so far as material to this appeal provided:

" *Second.* I give and bequeath to my beloved wife, Margaret Emerson Vanderbilt, the sum of Two million dollars ($2,000,000) in cash, or, in the discretion of the Executors of this my Will, in securities to be selected by them from the personal property which I may own at the time of my decease, of the then market value of Two million dollars ($2,000,000), with interest on said sum from the date of my decease to the date of the payment to her of such sum, or the transfer and assignment to her of such securities, as the case may be, at the rate of five per cent. per annum, in full satisfaction and discharge of my covenants made and contained in the certain ante-nuptial agreement made and executed by and between us, my said wife, then Margaret Emerson McKim, and myself, at London, England, on the 15th day of December, 1911, and in lieu and discharge of her right of dower in or to my real estate, and of any other right of any nature or character, if any, that otherwise she might have in or to any part of my estate, real or personal (excepting her rights under the further provisions made for her in this my Will), as provided in said agreement.

" Also, I give and bequeath to my said wife, Margaret Emerson Vanderbilt, the further sum of One million dollars

($1,000,000) in cash, or, in the discretion of the Executors of this my Will, in securities to be selected by them from the personal property which I may own at the time of my decease, of the then market value of One million dollars ($1,000,000), as and for her absolute property.

" I give and bequeath to my said wife, Margaret Emerson Vanderbilt, my house-boat ' Venture.' "

In addition to this provision the 3d paragraph of the will gave certain real estate to the widow and the 4th gave her a life interest in a fund of $5,000,000. The executors of the will have transferred to Margaret Emerson Vanderbilt securities to the value of $2,000,000 in discharge of the covenant and contract obligation of the ante-nuptial agreement. The transfer tax on all the bequests and devises to Mrs. Vanderbilt has been assessed. The $2,000,000 fund has been held to be exempt from taxation. The State Comptroller claims that this exemption was erroneous, his argument being that if Mrs. Vanderbilt takes under the will, the property so received was taxable, although the provisions of the will were performance of the ante-nuptial agreement, the argument being that as a testamentary disposition of the property is made, although in compliance with the provisions of the ante-nuptial agreement, Mrs. Vanderbilt takes the securities to the value of $2,000,000 under the will and not under the ante-nuptial agreement. In the ante-nuptial agreement four methods of the performance thereof were provided by its terms:

(1) Mr. Vanderbilt could pay the sum or transfer securities to the value thereof to Mrs. Vanderbilt in his lifetime; (2) he could by will direct his executors to pay the same or transfer the securities to her; or (3) if no express provision were made in the will for the payment of this sum, but other devises and bequests were made, then such provision to the extent of $2,000,000 was to be accepted by Mrs. Vanderbilt as a pecuniary provision for her in lieu and bar of any and all claims of dower in his real estate and also in lieu and wholly in discharge, satisfaction and payment of any and all payments of any and all right, title and interest in his personal estate; (4) if neither of the foregoing methods were adopted then the executors were to pay the said sum within eighteen months after his death.

The learned counsel for the Comptroller argues that if any testamentary provision was made in the will for the satisfaction of the obligation of the ante-nuptial agreement, Mrs. Vanderbilt would take under the provisions of the will and not by virtue of the agreement. He, therefore, distinguishes the case of *Matter of Baker* (83 App. Div. 530; affd., on opinion below, 178 N. Y. 575) from the case at bar.

In the *Baker* case there was an ante-nuptial agreement in which Baker agreed in contemplation of marriage to give to his intended wife $1,000 on or before the date of their marriage, and in the event that marriage was consummated and his wife survived him he agreed to make provision by his last will and testament for the payment to her from his estate of the further sum of $20,000, and on her part she agreed to accept the same in lieu of her dower or other rights in his estate. Baker died intestate. The widow had accepted a life insurance policy for $10,000 in partial satisfaction of her claims. The claim, was made that $10,000 of the amount paid Mrs. Baker after the death of her husband was subject to the Taxable Transfer Act. The court said: " It will doubtless be conceded that the respondent's claim is not one which is dependent for its validity upon a deed or grant of any kind, and, furthermore, that it is not testamentary in its character, although it did not become due and payable until after the death of her husband. It was simply the outgrowth of a contract entered into between. the decedent and the claimant, which was founded upon a perfectly good and valuable consideration, and one which is regarded with favor by the law and will generally be enforced in accordance with the intention of the parties. (*Johnston* v. *Spicer*, 107 N. Y. 185; *Peck* v. *Vandemark*, 99 id. 29; *White* v. *White*, 20 App. Div. 560.) It would seem to follow, therefore, that a claim arising from such a source is in the nature of a debt against the estate and as such enforcible like any other debt (*Hegeman* v. *Moon*, 131 N. Y. 462; *Warner* v. *Warner*, 18 Abb. N. C. 151); and if this is its character we do not see why it should be subject to taxation under the Transfer Tax Law any more than if it were a debt represented by a bond or note. The tax imposed by the statute in question is a tax on the right of succession and not on the property itself (*Matter of Dows*, 167 N. Y. 227); and ' a payment of an

obligation dependent upon a valuable consideration is not a succession in any sense.' (GOODRICH, P. J., in *Matter of Miller*, 77 App. Div. 473, 481.) "

In the case at bar, Mrs. Vanderbilt's right to receive these securities did not grow out of the will, its source was in the ante-nuptial agreement and the obligation could have been enforced against the estate had there been no will. It rested upon a valuable consideration, which was executed by the marriage. The mere fact that the method of the payment and satisfaction of the obligation was directed by the will did not change the inherent character of the obligation. As the Court of Appeals has recently said: " Transfers resting upon a valuable and adequate consideration, although within the classification of the statute, are not within the intendment of it and are not taxable. * * * The taxability does not depend upon fraud or an attempt to evade the statute; nor does it depend upon the purpose, or inducement of the transfer; nor does it depend upon the form given the transfer. The law searches out the reality and is not halted or controlled by the form (*Matter of Gould*, 156 N. Y. 423). The measure determining the liability or freedom from liability to the tax is the nature, the essence, the effect of the transfer. If, in truth, it, in effect, bestows, under the statutory conditions, a bounty or benefaction, and is not a transfer for money's worth, it is taxable." (*Matter of Orvis*, 223 N. Y. 1, 6, 8.)

Applying this test to the facts of the instant case, it is clear that the securities transferred to Mrs. Vanderbilt were not a bounty or benefaction but were transferred for a valuable consideration in satisfaction of an agreement not made in contemplation of death.

The order should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., LAUGHLIN, DOWLING and MERRELL, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.