In the Matter of the Transfer Tax upon the Estate of EDMUND SCHMOLL, Deceased.

ARMAND SCHMOLL, JR., and Others, Individually, and ARMAND SCHMOLL, JR., and Others, as Executors, etc., of EDMUND SCHMOLL, Deceased, Appellants; EUGENE M. TRAVIS, Comptroller of the State of New York, Respondent.

First Department, April 9, 1920.

**Tax — transfer tax — property passing to wife and children under ante-nuptial agreement not subject to transfer tax.**

A transfer tax is not assessable on property going to the widow under an ante-nuptial agreement, duly executed pursuant to the laws of the canton of Basel City, Switzerland, of which place both husband and wife were citizens at the time of the execution of the agreement and at the time of the death of the husband, which provided that the wife should be entitled to two-thirds of the common property on the death of the husband, and the law of said canton regulating marriage settlements provided that a marriage agreement could not be modified by any act of the parties, either testamentary or otherwise.

A transfer tax was not assessable on the share passing to the children under said ante-nuptial agreement, for said transfer to the children was made upon a valuable and adequate consideration and was not of a donative character.

APPEAL by Armand Schmoll, Jr., and others, individually, and Armand Schmoll, Jr., and others, as executors, etc., from so much of an order of the Surrogate's Court of the county of New York, entered in said surrogate's office on the 3d day of September, 1919, as affirms an order entered in said

surrogate's office on the 10th day of June, 1919, fixing and assessing a tax upon the transfers of the property of said decedent under the law relating to taxable transfers of property.

*Sidney J. Loeb* of counsel [*Prince & Nathan,* attorneys], for the appellants.

*Schuyler C. Carlton* of counsel [*Lafayette B. Gleason,* attorney], for the respondent.

MERRELL, J.:

This appeal is by the children and executors of Edmund Schmoll, deceased, from the order of the surrogate of New York county affirming the order of said surrogate fixing and assessing the tax upon certain transfers of decedent's property pursuant to the law relating to taxable transfers of property.

Decedent died a resident of the city of New York on December 20, 1917. At the time of his death he was a citizen of Switzerland. Decedent left a will which was duly admitted to probate in the Surrogate's Court of New York county whereby he gave one-half of his property to his wife, Emma Schmoll, and one-half to his children, subject to certain life interests. Proceedings were instituted for the appraisal of decedent's estate under the act with relation to taxable transfers of property, and the appraiser placed the value of decedent's estate at $1,238,736 and reported that two-thirds of decedent's estate passed to his widow under and by virtue of an ante-nuptial agreement entered into between decedent and his prospective wife, and that said two-thirds which the widow received was exempt from the payment of a transfer tax in the State of New York.

Decedent left him surviving three children, and the appraiser valued the interest of each of said children in their father's estate at $132,637.36, and reported that said children's interests were taxable under the statute. Thereupon an order was entered assessing a tax upon the shares of said children. The children have brought this appeal in which they are joined by the executors of the estate.

The decedent was married at Paris, France, on November 30, 1891. At that time both decedent and his intended wife were citizens of Switzerland, and the marriage was solemnized

in Paris in accordance with the Swiss law. Prior to the marriage the decedent and his prospective wife, the latter assisted and authorized by her guardian, entered into an agreement in writing which recited that the intended husband and wife adopted as the basis of their union the system of universal community of property as established by the legislation of the Canton of Basel City, Switzerland, the birthplace of the intended husband, save as modified by the marriage agreement. At that time Basel City was and still is one of the cantons of the Confederation of Switzerland, and as such has an independent body of municipal law regulating marriage and marriage contracts and the foundation and distribution of property, real and personal. Such law relative to the financial relation of married persons, of inheritances and gifts, provided, by article 1, that during the marriage there exists between the spouses, by law, common property; and by article 2 it is provided that the fortune of the spouses, whether brought by them into the married relation or received during the pendency thereof, through inheritance or gift, or earned, constitutes common property. By article 13 of said law it is provided that in the absence of a contract of marriage, two-thirds of the common fortune belongs to the surviving spouse on the death of the other, and one-third thereof belongs to the heirs of the deceased spouse. By article 14 said law provided that the manner of division might be altered by means of the marriage contract, but subject to the limitation that there should fall to the descendants of deceased spouses not less than either one-third of the common fortune; or that fortune which was brought into the married relation by the deceased spouse; that fortune inherited by him during the existence of the marriage, together with one-third of the fortune earned. By article 17 it is provided that marriage contracts may be executed only before the marriage takes place; that such contracts must be in writing, and unless executed by and before a notary, be exhibited before the marriage to a notary, who shall certify upon the instrument the times of such exhibition. Such contracts were required to be signed by the intended spouses and by two male witnesses of full age. It was further provided by article 17 that such contracts of marriage could not be altered or canceled during

the existence of the marriage, " not even with the mutual consent of the spouses."

The marriage contract executed by the parties conformed to all the requirements of the said law of Basel City, Switzerland. The contract recited that the intended husband, Edmund Schmoll, declared that he would contribute to the marriage as a part of the common property of the marriage relation to be assumed by the parties, 142,000 francs, of which 12,000 consisted of his personal effects, and 130,000 francs comprised his interest in the partnership known as " Schmoll fils " at Basel City, Switzerland. The intended wife, by the ante-nuptial agreement, declared that she would contribute to the marriage as common property her own personal clothes, effects, and movable property, valued at ·5,000 francs; also the sum of 30,000 francs in cash, forming her personal estate, and the further sum of 20,000 francs in cash to be settled upon her upon the day of her marriage by her mother as an advancement of inheritance out of the donor's estate. The total amount thus to be contributed by the intended wife was 55,000 francs. It was further provided by article 5 of the ante-nuptial agreement as follows:

" Article 5. If at the time of the decease of either the husband or the wife there should exist some children or descendants from this marriage, the division between the survivor and the children or descendants shall be regulated as follows:

" 1. If the husband, Mr. Edmund Schmoll, comes to die before his wife, the latter. will be entitled to two-thirds of the whole of the common estate of husband and wife as it stands on the date of the decease of the predeceased and the children or descendants to one-third, the whole according to the provisions of the legislation of the Canton of Basel City in case no stipulations to the contrary should be made by marriage contract."

Said• ante-nuptial agreement was executed in due form by the parties thereto, the contributions were made as therein provided, and said agreement was in full force and effect at the time of the decedent's death.

Upwards of twelve years since, the decedent and his wife came to America, where they resided until decedent's death

on December 30, 1917, but both husband and wife, however, always remained citizens of Switzerland. Decedent's widow disregarded the provisions of her husband's will for her benefit, and, under the ante-nuptial agreement, claimed two-thirds of his property. The Comptroller conceded that she was entitled thereto by virtue of said agreement. Admitting that by virtue of the terms of said agreement, which, under the law of Switzerland, could not be modified by any act of the parties, either testamentary or otherwise, the two-thirds of her husband's property went to the widow and was not liable to taxation under the act in relation to taxable transfers of property, the Comptroller conceded and the surrogate held that the transfer to the widow of decedent was upon good consideration, was not donative, and, therefore, non-taxable under the act. (See 108 Misc. Rep. 492.) I think the surrogate properly held that the share of decedent's estate received by the widow was not subject to tax. The case of *Matter of Vanderbilt*, recently decided in this court (184 App. Div. 661, and affirmed by the Court of Appeals, 226 N. Y. 638) seems to be conclusive authority in support of the surrogate's action in this respect. Indeed, the Comptroller makes no claim that the widow's share of the estate received by her by virtue of the ante-nuptial agreement is subject to tax. The Comptroller, however, contends and the surrogate has held that the shares of the children are taxable under the act. It was conceded by the Comptroller that while the children were not parties to the ante-nuptial agreement, they could enforce its provisions for their benefit. The law is well settled that equity will protect and enforce the rights of decedent's children under the ante-nuptial agreement. In *Phalen* v. *United States Trust Co.* (186 N. Y. 178) the Court of Appeals said, at page 187: " The question as to what persons are within the consideration of the agreement in this class of cases has frequently arisen, but it has never been doubted that the parties whose marriage forms the occasion of the agreement are within the consideration and entitled to enforce the contract. *Even the issue of such marriage may enforce such an agreement, although they may not be born at the time it is made.*" (Italics mine.)

Judge CULLEN, in discussing the same principle, in *Borland* v. *Welch* (162 N. Y. 104, 110, 111), quoted from Atherley on

Marriage Settlements (p. 125) as follows: " ' Equity will execute marriage articles at the instance of all persons who are within the influence of the marriage consideration, for all these rest their claims on the ground of a valuable consideration.' But (p. 131) ' courts of equity, generally speaking, will not enforce a specific performance of agreements, at the instance of volunteers. They make an exception, however, to this rule, in favor of a wife and children; and the reason for this exception is, that for them the settlor is under a natural and moral obligation to provide.' Such persons alone are within the influence of the marriage consideration."

The surrogate recognized such right in the children, and held that the provisions of the ante-nuptial agreement in their behalf were enforcible in equity, but held that notwithstanding such right to enforce the ante-nuptial agreement, the property to which they are entitled under the agreement is subject to a transfer tax. The surrogate bases his decision in this respect upon the provisions of subdivision 4 of section 220 of the Tax Law, which provides that a tax shall be imposed upon the transfer of property when such transfer is made " by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor or intended to take effect in possession or enjoyment at or after such death." (See Laws of 1916, chap. 323, amdg. Tax Law, § 220, subd. 4.)* The surrogate held that the transfer of the property to decedent's children under the terms of the ante-nuptial agreement was entirely donative in its character; that it was a gift to them from their parents, and as the gift was not intended to take effect in possession or enjoyment until the death of one of the parents, and did not take effect until the death of the decedent herein, that it came within the classification of transfers mentioned in the subdivision quoted.

It seems to me that the surrogate was in error in thus holding the property received by the children to be subject to the tax, and that the surrogate's assumption that because the transfer to the children came within the classification of the statute as " intended to take effect in possession or enjoy-

---

* Since amd. by Laws of 1919, chap. 626.— [REP.

ment at or after such death," it was, therefore, taxable. Recent decisions of the courts of this State have established the law that transfers arising upon a valuable and adequate consideration, although within the classification of the statute, are not within the intendment of it and are not taxable. (*Matter of Orvis*, 223 N. Y. 1, 6; *Matter of Baker*, 83 App. Div. 530; affd., 178 N. Y. 575.)

There can be no question that as to decedent's estate the two-thirds thereof which his widow received was not subject to taxation, because it was received by her pursuant to the ante-nuptial agreement upon a good and sufficient consideration paid and furnished by her. I think that the transfer to the children was likewise upon a good and sufficient consideration, and that it was entirely proper for the prospective husband and wife not only to agree as to the devolution of their common property upon the death of either, and that the survivor of them should receive two-thirds of said property, but that any children born of their marriage should receive the remainder. In making such agreement the husband acted upon sufficient consideration. Both parents had a natural desire to provide for the prospective offspring of their contemplated union, and it is conceded that the agreement made in behalf of decedent's children is such an agreement as could be enforced in behalf of said children. With this concession I can see no good reason why the share in decedent's property which the children received under and by virtue of the ante-nuptial agreement executed by their parents was not upon consideration. It was in no sense donative or a benefaction. Their claims are in the nature of a debt against the estate and as such are enforcible as any other debt. (*Hegeman* v. *Moon*, 131 N. Y. 462.) The prospective mother has the absolute right, it seems to me, in consideration of her entering the married state with the decedent and in consideration of her investment of her property and separate estate in the common property of the parties, to exact the promise on decedent's part that upon death any children born to their marriage, and in whom she was naturally deeply interested, should receive a share of said common property. The consideration was a valuable one and the share of decedent's estate which the children have received is but

the fulfillment of their father's contract. I know of no reason under such circumstances why the amounts thus received by them are subject to taxation under the Transfer Tax Law. As was said in *Matter of Orvis* (*supra*): " Transfers resting upon a valuable and adequate consideration, although within the classification of the statute, are not within the intendment of it and are not taxable. * * * The taxability does not depend upon fraud or an attempt to evade the statute; nor does it depend upon the purpose or inducement of the transfer; nor does it depend upon the form given the transfer. * * * The measure determining the liability or freedom from liability to the tax is the nature, the essence, the effect of the transfer. If, in truth, it, in effect, bestows, under the statutory conditions, a bounty or benefaction, and is not a transfer for money's worth, it is taxable."

I think the transfer to decedent's children was upon consideration and " for money's worth," and, therefore, non-taxable.

The appellant also criticizes the report of the appraiser fixing the value of decedent's interest in the good will of a copartnership in existence at the time of his death, as fifty per cent of the value of such good will. Inasmuch as we hold that the transfer to decedent's children is not subject to tax, it is unnecessary to determine whether or not the valuation placed upon any item of decedent's property by the appraiser was correct.

The order appealed from herein should be reversed, with ten dollars costs and disbursements, and the proceeding remitted to the Surrogate's Court for further action in accordance with this opinion.

Clarke, P. J., Laughlin, Smith and Page, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and proceedings remitted to Surrogate's Court for further action in accordance with opinion.