In the Matter of the Appraisal of the Estate of KATRINA TRASK PEABODY, Deceased, Pursuant to Article 10 of the Tax Law Relating to Taxable Transfers of Property.

Surrogate's Court, Saratoga County, January 2, 1925.

Taxation — transfer tax — testatrix and husband entered into agreement whereby husband was to leave his property to wife with power of disposal and wife was to dispose of it to corporation — husband died and his will executed in accordance with agreement was probated — wife transferred real property in accordance with agreement and executed will in question confirming transfer — corporation acquired beneficial interest on execution of agreement by husband and wife — said transfer to corporation not taxable under Tax Law, art. 10 — said corporation organized to maintain residence and retreat for persons actively and usefully engaged in artistic and creative work is benevolent corporation and transfer to it is not taxable — agreement between husband and wife was not reciprocal and depended for fulfillment upon survivorship of wife — transfer by reason of its provisions not in contemplation of death — transfer of real property to American Scenic and Historic Preservation Society not exempt under Tax Law, § 221.

A transfer of property to a corporation organized for the purpose of maintaining a residence and retreat for persons actively and usefully engaged in artistic

and creative work is not taxable under article 10 of the Tax Law, where it appears that the testatrix and her husband entered into an agreement as to the disposition of the property in question, which belonged to the testatrix, under which the husband agreed to make a will providing for a gift of all the residue of his estate in trust for the testatrix during her lifetime, with power by her will, or by deed, to dispose of it absolutely; that the testatrix in consideration of such provision in the agreement undertook upon receiving such residue, that she would leave a will by which she would give all of the property, which then belonged to her under his will, to certain specified legatees and devisees, among whom was the corporation in question, which was to receive the real property belonging to the testatrix and certain personal property; and that the testatrix executed a deed to the corporation in question of the real property specified in the agreement and in her will confirmed said conveyance.

Upon the execution of the agreement the corporation in question acquired a beneficial interest in the real property which was later transferred to it and upon the death of the husband leaving a will in accordance with the terms of the agreement, the corporation became vested with certain rights of which it could not be deprived, except by voluntary relinquishment, and, therefore, as to the property of which the testatrix was to have the life use and as to which the residue passed upon her death to different persons, her will did not in effect transfer anything to them, but the transfer of rights took place at the time of the receipt by the testatrix of the property of her husband, according to the terms of the agreement, and the possession and enjoyment by the persons having a beneficial interest were merely suspended during the lifetime of the testatrix.

The corporation and others mentioned in the agreement between the testatrix and her husband became vested with property rights, since it was of the essence of the contract to provide a benefit for them, and where that is the case, they have a right to sue and enforce the specific performance of the contract.

The transfer to the corporation in question was exempt also for the reason that it is a benevolent corporation, for while it does not specifically provide for the benefit of needy persons, the articles of incorporation and by-laws do not prohibit the directors from extending the privileges of the corporation to needy and destitute persons who may be engaged in creative and artistic work. Furthermore, the plan of the corporation was one looking with broad generosity to the welfare and benefit of the general public, as well as that of particular individuals.

The agreement between the testatrix and her husband was not a reciprocal agreement, but depended for its fulfillment upon the survivorship of the testatrix and any transfer by reason of its provision does not, therefore, constitute a transfer in contemplation of death, but is rather a transfer in expectation of survivorship.

The gift under the will of the testatrix to the American Scenic and Historic Preservation Society of real property does not come within the terms of the exemption provided for gifts to such a corporation (Tax Law, § 221) and is, therefore, taxable.

THIS is an appeal by the executors and by the legatees from a transfer tax order made December 10, 1923, under article 10 of the Tax Law, by which a tax of $818,314.38 given by the will of Katrina Trask Peabody to the Corporation of Yadoo (formerly Trustees of Pine Garde) and of $150 upon a gift of $3,000 to American Scenic

and Historic Preservation Society and to divers legacies to persons named.

The appeal is based upon the following contentions.

1. That the bequest to the Corporation of Yaddo is exempt as being a corporation which is either educational, library, charitable, benevolent or a hospital corporation or organized exclusively for the moral or mental improvement of men or women or for literary purposes; also for the further reason that a portion of the property taxed passed to said corporation previous to decedent's death and that the gift was not in contemplation of death.

2. That the bequest to American Scenic and Historic Preservation Society is exempt because such corporation is an educational, historic or patriotic corporation.

3. That the amounts of said legacies did not vest in the persons named by virtue of Mrs. Trask's will or the intestate laws of the State, but pursuant to the contract between decedent and her now deceased husband, Spencer Trask, which vested years before the death of either Mr. or Mrs. Trask, and that their enumeration in the will of Katrina Trask Peabody is simply an acknowledgment of the contract obligation; also that the tax assessed upon the following bequests are excessive in that $1,634.02 against George L. Nichols should be $1,334.02; $482.84 against Allena Pardee should be $361.73; $658.14 against George Foster Peabody should be $248.14.

4. Also that the tax upon alleged bequests to Edwin Knox Mitchell and Acosta Nichols is excessive and that no tax is due thereon; also that the tax upon the alleged bequest to Hettie E. Mitchell, if any, should be $1,000, instead of $1,033.33.

*Spencer B. Eddy*, for the executors.

*Seth T. Cole*, for the State Tax Commission.

TUCK, S.:

Katrina Trask Peabody died January 7, 1922, leaving a last will and testament, which was duly proved. The county treasurer of Saratoga county, appraiser for the State, filed his report December 10, 1923, and a *pro forma* order was made thereon fixing the transfer tax on the same date. From that order this appeal is taken.

The principal controversy in point of value grows out of the relation of Mrs. Peabody, her former husband, Spencer Trask, and the corporation Trustees of Pine Garde, which later became Corporation of Yaddo.

In February, 1900, divers persons associated themselves together, under the provisions of the Membership Corporation Law of New York, for the formation of a corporation known as Trustees of Pine Garde for the following purposes:

" To maintain a residence and retreat for persons actually and usefully engaged in artistic and creative work."

Its operations were to be principally conducted in the State of New York.

The by-laws in effect January 7, 1922, provided that " the object of the corporation shall be to maintain a residence and retreat for persons actively and usefully engaged in artistic and creative work."

Also that any person may become a member by being elected by a three-fifths vote of the directors. The directors were to be eleven in number.

About July, 1922, the name of the corporation was changed to that of " The Corporation of Yaddo " without any change in the corporate powers.

The by-laws provided that neither the corporation nor any officer, member or employee shall receive any salary or other emoluments except such as may be commensurate for services actually rendered; also " no retreat maintained by this corporation shall be used for any purpose other than for the moral and mental improvement of men or women and no person shall be admitted to any such retreat unless he or she shall be actively or usefully engaged in some creative art and no such person shall be entitled to the privileges of such retreat, unless in the opinion of the executive committee the enjoyment of those privileges shall tend to furnish assistance and inspiration in some creative art that is of benefit to humanity. The executive committee in granting or refusing applications for admission to such retreat shall, in all cases, be governed by the desire of the founders that this corporation contribute to the advancement of mankind by assisting those who, by creative art, have contributed to the mental or moral improvement of humanity, rather than as an asylum for those who have mistakenly applied their talent.

On April 5, 1908, Spencer Trask and Katrina Trask, his wife, made an agreement which recited that they had for many years resided upon the estate called " Yaddo," which then belonged to Mrs. Trask, but which had been acquired by her from her husband or by money given her by him; that they desired that said estate after they died should become the property of the Trustees of Pine Garde; that Mr. Trask had theretofore made his will January 24, 1900, by which, after certain other gifts, he gave all the residue of his estate in trust for his wife, during her lifetime, with power by her will or by deed to dispose of it absolutely after her death; that since making the will the parties had agreed that so far as the will gave her any power to dispose of her estate after his death

it should remain unrevoked, but upon condition that this agreement be made; that if his will be changed it should contain power to her to dispose of the residue after his death.

This agreement further provided that in consideration of such provision, Mrs. Trask agreed that upon receiving such residue, under his will, she would leave a will by which she should give all the estate of Yaddo, now hers, and all the estate which she should receive from her husband, Spencer Trask, or under his will as follows, to wit:

*First.* To Alonson Trask Enos, the nephew of Spencer Trask, the sum of $10,000; to Frank Enos, nephew of Spencer Trask, the sum of $10,000. There were other provisions in the contract as to bequests of these or other sums to the above two persons, but it is not important or necessary to consider them here. To Hetty M. Mitchell, niece of Spencer Trask, $20,000, or to her heirs; to Edwin Knox Mitchell, husband of Hetty M. Mitchell, the sum of $10,000, or his heirs; to Spencer Trask Mitchell, son of the above, the sum of $20,000 and the gold watch carried by Spencer Trask since 1872; to Frederika Mitchell, daughter of Hetty M. Mitchell, the sum of $5,000; to Edwin Knox Mitchell, Jr., son of Hetty M. Mitchell, the sum of $5,000; to our friend, George Foster Peabody, the ruby ring worn by Spencer Trask and the sum of $20,000; to George L. Nichols, the brother of Katrina Trask, the sum of $10,000, or his heirs; to Christina Nichols, daughter of George L. Nichols, the sum of $10,000, or her heirs; to Acosta Nichols, brother of Katrina Trask, the sum of $10,000, or his heirs; to Marie C. Phelps, sister of Katrina Trask, the sum of $5,000; to Acosta N. Phelps, nephew of Katrina Trask, the sum of $5,000; to Margaret Lacey and to Annie Fields Alden, our friends, each $5,000; to Katrina Sturges, daughter of Philomen and Mia Sturges, the sum of $5,000; to Katrina Van Dyke, daughter of Henry Van Dyke, the sum of $5,000; to the Trustees of the Diocese of Albany of the Protestant Episcopal Church the sum of $100,000 in trust; the sum of $20,000 to be given such old servants as Katrina Trask, or her executors, may direct by will or otherwise.

*Second.* The sum of $160,000 to be given to her executors in trust to pay income of designated portions thereof to Allena G. Pardee and six others for life.

*Third.* The estate of Yaddo also with divers personal property to the Trustees of Pine Garde.

*Fourth.* Making certain provisions for insurance.

*Fifth.* Authorizing and empowering executors in relation to disposition of securities.

*Sixth.* Giving all the rest, residue and remainder of the estate of

Katrina Trask to be disposed and bequeathed absolutely to the Trustees of Pine Garde.

*Seventh.* Providing that nothing shall impair the absolute right of Katrina Trask to dispose of all pictures, furniture and personal articles, nor certain real estate at Lake George consisting of Triuna and Diamond Island and property known as Amitola and buildings and furnishings thereon and therein, and also the sum of $50,000.

*Eighth.* Making provision for the house and land in case she has none for Allena G. Pardee.

*Ninth.* Making provision for taxes to be paid by the estate.

On April 8, 1909, a further agreement was made between Mr. and Mrs. Trask reciting the agreement of April 5, 1909, and declaring void the provisions made in section 18 of the testamentary agreement giving the Trustees of the Diocese of Albany the sum of $100,000 in trust and leaving it optional with Katrina Trask whether or not, or how much of said bequest, be so given.

Spencer Trask died on the 31st day of December, 1909, leaving a last will and testament, agreeably with the terms and conditions of the agreement entered into between him and his wife, Katrina Trask. This will was admitted to probate by the Surrogate's Court of Saratoga county on the 20th day of January, 1910.

On September 1, 1921, Katrina Trask Peabody executed and delivered a deed of conveyance to the Trustees of Pine Garde of various provisions, the first being a parcel, 102, sixty-two acres, reserving the use of the Barhyte burying ground; the second parcel, fifty-two acres in extent, excepting therefrom various parcels sold to Samuel Childs and others and also reserving from the premises all rights and privileges of the Union Avenue Association of Saratoga Springs; the third parcel consisting of eighteen lots in the city of Saratoga Springs on Union avenue and particularly described in said instrument; the fourth parcel consisting of lots 135 to 140, inclusive, on a map of property of John Morrissey on Union avenue, Saratoga Springs, therein particularly described, and excepting the use and occupation of the " west house," so called, and of certain appurtenances and also excepting the use and occupation of five acres of land for Allena G. Pardee and also conveying certain personal property.

The last will and testament of Katrina Trask Peabody was admitted to probate January 16, 1922. This recites the agreement between herself and her former husband, Spencer Trask, dated April 5, 1909, relating to the use and disposition of Yaddo and its furnishings and other property, and to the power of disposal by his will, and further recites that such disposal was for the purpose of accomplishing a plan endeared to both of them and which

she proposed to carry out.   The will further confirmed the conveyance of real estate which she had theretofore made.   The will contains this recital:

"After the children born to Spencer Trask and myself had left us, we became more and more conscious of the unique inspiration which pervades Yaddo — to which inspiration the earnest souls who have visited and worked here have borne uniform and lasting testimony — and we became very clearly to realize with its traditions, its history and inspirations, should not be circumscribed, nor limited, by any personal or family life, after we both had left it. It is in strict accord with such agreement   *   *   *   that I have executed the foregoing deed and make provisions herein contained.

"*Fourth.* I give and bequeath the following sums to the following named persons as contemplated by such agreement with my said husband, Spencer Trask."

By her acceptance of the provision made for her in the will of her husband, Spencer Trask, and which provision in all respects complied with the terms of the contract of April 5, 1909, Mrs. Peabody lost the absolute power of disposition of the residue of the estate of Spencer Trask except such portions thereof as were given to her absolutely.

She became bound to perform her part of the obligation of the contract and no question is raised as to the validity of the contract so entered into by and between them.   Had Mrs. Peabody died intestate that portion of the residuary estate of Spencer Trask in which she had a life estate would be subject to the claims of persons and corporations having a beneficial interest under the contract of April 5, 1909, and their rights would spring from the execution of the contract by the parties.   From the date of its execution until the date of Spencer Trask's death, it was an executory contract, but after his death leaving a will, according to the tenor of his promises made in the agreement, the persons to whom a beneficial interest was given pursuant to the terms of the agreement became vested with certain rights of which they could not be deprived except by their voluntary relinquishment.

Mrs. Peabody, therefore, was deprived of acting freely and absolutely in relation to certain of the estate of Spencer Trask and it seems to the court that Mrs. Peabody realized this when she made her will and that she expressly ratified the contract by the language used in her will.

To make a valid will of one's property, it is essential that the testator be acting freely and without restraint.   How can it be said that Mrs. Peabody was acting freely and without restraint when persons having a beneficial interest under the contract of

April 5, 1909, were vested with rights which could not be lawfully disregarded or ignored by Mrs. Peabody, nor diminished by any act of hers?

It is the opinion of the court that as to the property of which Mrs. Peabody was to have the life use and as to which the residue passed upon her death to divers persons, her will did not in effect transfer anything to them, but the transfer of rights took place at the time of the receipt by Mrs. Peabody of the property of Spencer Trask, according to the terms of the agreement, and that the possession and enjoyment by persons having a beneficial interest under the agreement were merely suspended during the period of her lifetime or until such time as she might convey to them her life interest and vested them with the immediate possession and enjoyment of the property.

In *Matter of Vanderbilt* (184 App. Div. 661), which was unanimously affirmed by the Court of Appeals (226 N. Y. 638), the courts have determined that a provision in a will for the discharge of the obligation of a contract which was entered into before death and which was founded upon a valuable consideration, does not constitute a taxable transfer.

The instant case seems to the court to correspond in all respects with *Matter of Vanderbilt*, with the exception that the persons receiving the beneficial interest under the contract were not the contracting parties, but third parties.

It is well established in this State that in a contract third persons become vested with rights where it is the essence of the contract to provide a benefit for them and that in such cases they may sue and enforce the specific performance of the contract.

As to the persons who thus received under the contract of April 5, 1909, the provision of the *pro forma* order imposing a tax upon their succession should be modified and no tax assessed.

The Corporation of Yaddo bases its claim for exemption upon the further grounds that the corporation is a benevolent corporation.

The articles of incorporation and by-laws do not prohibit the directors from extending the privileges of the corporation to needy and destitute persons who may be engaged in creative and artistic work. If it was the purpose of the founders of the corporation to extend aid and assistance to needy and destitute persons engaged in artistic and creative work, the corporation would be a benevolent corporation, but would more properly be classified as a charitable corporation, and undoubtedly as such its succession, whether by the terms of the contract or by the will of Katrina Trask Peabody, would be exempt from the transfer tax.

It does not appear to have been the purpose of the founders to

Surrogate's Court, Saratoga County, January, 1925.     [Vol. 124

prevent a charitable use of the retreat which it is proposed to establish, but it was not their purpose, however, to limit the operations of the corporation to charitable operations alone.

Benevolence consists not only in that charity which relieves the needy but it has a far broader field and includes acts of well-wishing towards others, acts for the promotion of general happiness and some plan actuated for the love of others and extraordinary desire for their well-being.

The institution which is proposed to be founded is one wherein there is no consideration or advantage moving to the founders or directors.

The by-laws of the corporation expressly prohibit the directors from receiving any profit or return except for services actually rendered.

The production of creative and artistic work is of benefit to the general public. To establish a retreat where such work can be done confers a benefit upon the general public as well as upon the individual artist benefited.

The institution appears to be one designed by the founders to fulfill a purpose which is not, and cannot be accomplished by the ordinary forms of our government. The plan for it is one looking with broad generosity to the welfare and benefit of the general public as well as that of particular individuals.

It would seem, therefore, that such a corporation is a benevolent corporation, and, as a consequence, the transfer to it of rights or property, whether by the contract of April 5, 1909, or by the will of Katrina Trask Peabody, is by the terms of the statute exempt from tax.

It is to be noted that the agreement made by Spencer Trask and Katrina Trask was not a reciprocal agreement. It depended for its fulfillment upon the survivorship of Mrs. Trask and any transfer by reason of its provisions does not, therefore, constitute a transfer in contemplation of death, but is rather a transfer in expectation of Mrs. Trask's survivorship, and hence any transfer under the contract cannot be classified as a transfer in contemplation of death.

Under section 221 of the Tax Law, personal property other than money or securities, bequeathed to a corporation organized exclusively for patriotic or benevolent purposes, is exempt from taxation.

The gift under the will of Katrina Trask Peabody to the American Scenic and Historic Preservation Society is a devise of real estate and consequently does not come within the terms of the exemption provided for gifts to such a corporation.

The decision in *Matter of DePeyster* (210 N. Y. 216) seems to be

MATTER OF COOKE. **347**

Misc. 347]    Surrogate's Court, New York County, December, 1924.

controlling upon this subject and the devise to the corporation of the island in Lake George was properly taxed by the appraiser.

The order is, therefore, reversed and the matter remitted to the appraiser to proceed as indicated.

Ordered accordingly.