In the Matter of Appraisal for Taxation of the Estate of HAMPTON HOWELL, Deceased.

JOHN HILL MORGAN and Another, as Executors, etc., of HAMPTON HOWELL, Deceased, Appellants; STATE TAX COMMISSION, Respondent.*

Second Department, October 7, 1929.

*Richmond L. Brown*, for the appellants.

*Percy D. Stoddart* [*Harry M. Peyser* with him on the brief], for the respondent.

KAPPER, J. Hampton Howell died January 5, 1926. On June 1, 1922, he entered into a separation agreement with his wife, Grace B. Howell. This agreement recites that differences between husband and wife had arisen and that they were and had been

---

* Revg. 131 Misc. 509.

for a considerable period theretofore living separate and apart. It was then agreed that they continue this separate life during the remainder of their marital obligation, the wife agreeing not to contract debts or liabilities for which the husband should be answerable, and further agreeing to release dower or right of dower in any real property of her husband which he might thereafter acquire in any manner. The custody of an adopted son, Gilbert Howell, was given during minority to the husband. The husband then undertook to pay, beginning July 1, 1922, and monthly thereafter, an amount equal to one-third of his monthly income during the life of the wife and for her use and benefit. The sum of $400 a month was fixed upon as the amount which the agreement states was expected to equal one-third of the husband's income, with the further proviso that if his income should exceed the amount of which $400 a month was considered one-third, then the husband was to pay the wife one-third of whatever his income would amount to. The provision was next made for a reduction proportionately if the husband's total income proved to be less than three times the sum of $400 a month. Such sum being paid monthly, the wife agreed that it should be " for her support, maintenance, clothing and other necessaries, and that she will not ask or demand an amount in addition thereto." The 9th and 10th paragraphs of the agreement are as follows:

" *Ninth.* The said wife, in consideration of the foregoing, hereby agrees to and does release the said husband from any and all claims *except as hereinafter set forth* which she or any other person has or may have against the said husband for her support and maintenance or otherwise, past, present or future, and hereby specifically agrees that said husband may from time to time notify all firms, copartnerships or corporations in which he or she have maintained charge accounts, that the same are hereby closed.

" *Tenth.* The said husband hereby agrees to provide by last Will and Testament that should he depart this life previous to the decease of the wife, the said wife shall receive an amount equal to one-third of his net income arising from his estate after the payment of all debts, inheritance or succession taxes, legal fees, administration expenses, etc., for the balance of her natural life and at her death the principal of said fund shall go to the adopted child of the parties hereto, said Gilbert Howell, and in consideration whereof the said wife hereby agrees that should the said husband predecease her all rights under this agreement, except as to the provision to be made by his last Will and Testament, shall cease and determine; and should the said wife predecease the husband then and in that event the said wife, for herself, her heirs, executors,

administrators and assigns, hereby agrees that all rights under this agreement or under said Will shall cease and determine."

Under date of August 8, 1925, a little more than three years after the making of this agreement of separation, the husband made his last will and, following out the purpose and effect of the separation agreement, directed his executors to divide his residuary estate into three equal parts, the income of one of such three equal parts he gave to his wife for life and upon her death to be paid over to the son.

The learned surrogate, upon an appeal from the order assessing the transfer tax upon the life interest of the wife valued at $59,265, and a tax upon the remainder interest of the son of the value of $90,158, sustained the transfer tax appraiser's report with a slight reduction upon the total value of the wife's interest which had not been correctly computed. This was decreed over the objection of the executors who claimed that both the life interest of the wife and the remainder of the son in the one-third of the residuary did not come to them as a testamentary disposition but was a payment which was made obligatory upon the testator by the terms and provisions of the separation agreement.

Our attention is directed in the record to an earlier order of the learned surrogate construing this will, in which it was decreed " that the construction and effect of the disposition of property contained in said Will, as requested in said petition is that the trust created for Grace B. Howell * * * under the provisions of Clause Seventh (a) of said Will, was intended by the testator, Hampton Howell, deceased, to be in performance of his obligations under the provisions of Clause Tenth of the separation agreement of June 1, 1922, to provide by Will for Grace B. Howell * * *, and was not intended by him to be a bounty to Grace B. Howell * * * in addition to her rights under said separation agreement; and further that Clause Seventh (a) of said Will was a substantial compliance with the obligations of the testator under said separation agreement."

And so we have the proposition advanced by the executors, appellants, that the assessment of taxes on the life interest of the wife and the remainder interest of the son was erroneous for the reason that the property so devoted by the terms of the will was a transfer based upon and for a valuable consideration; while on behalf of the State Tax Commission the contention is made that the transfer was under and pursuant to the provisions of the will only.

In numerous cases ante-nuptial agreements to make provision for a wife by will have been upheld in the nature of a contract and

the discharge of an obligation in the nature of a debt and, therefore, not taxable because neither donative nor a benefaction. (*Matter of Baker*, 83 App. Div. 530; affd., 178 N. Y. 575; *Matter of Vanderbilt*, 184 App. Div. 661; affd., 226 N. Y. 638; *Matter of Schmoll*, 191 App. Div. 435; affd., 230 N. Y. 559; *Matter of Peabody*, 124 Misc. 338.)

The language of ADAMS, P. J., in *Matter of Baker* (*supra*, at p. 532) illustrates the principles sufficiently to quote alone from that case on this proposition: " It will doubtless be conceded that the respondent's claim is not one which is dependent for its validity upon a deed or grant of any kind, and, furthermore, that it is not testamentary in its character, although it did not become due and payable until after the death of her husband. It was simply the outgrowth of a contract entered into between the decedent and the claimant, which was founded upon a perfectly good and valuable consideration, and one which is regarded with favor by the law and will generally be enforced in accordance with the intention of the parties. * * * It would seem to follow, therefore, that a claim arising from such a source is in the nature of a debt against the estate and as such enforcible like any other debt * * *; and if this is its character we do not see why it should be subject to taxation under the Transfer Tax Law any more than if it were a debt represented by a bond or note. The tax imposed by the statute in question is a tax on the right of succession and not on the property itself * * *; and ' a payment of an obligation dependent upon a valuable consideration is not a succession in any sense.' (GOODRICH, P. J., in *Matter of Miller*, 77 App. Div. 473, 481.) "

*Matter of Vanderbilt* (*supra*) involved an ante-nuptial agreement by the husband to will to the wife $2,000,000 if she survived him. The agreement was carried out by an appropriate provision in the will, and the sum so payable was held exempt from transfer tax.

I am quite in accord with the learned surrogate in his construction of the will as above quoted from his earlier order to which I referred. This trust of one-third of the testator's residuary estate out of which the wife was to receive the income for life was, as the learned surrogate then said, " not intended * * * to be a bounty " to the wife over and above " her rights under said separation agreement," and that the will provision " was a substantial compliance with the obligations of the testator under said separation agreement."

It is hardly necessary to dwell upon the enforcible contract character of a proper separation agreement between husband and wife. The one now in question is not repudiated but is insisted upon

as a valid and subsisting agreement recognized by repeated decisions.

The leading case of *Winter* v. *Winter* (191 N. Y. 462) points out the propriety and right of the parties to a marriage to so contract, furthermore upholding the right of the wife to sue under the separation agreement for the payment by the husband of a sum due under the contract. " She can sue her husband on his promise to pay contained in the contract in question." (*Winter* v. *Winter*, *supra*, at p. 474.) " Such a contract is binding upon both parties unless set aside or impeached." (*Cain* v. *Cain*, 188 App. Div. at p. 782; *Ascher* v. *Ascher*, 213 id. 183, 185.) The wife's only remedy to compel the husband to comply with the marital obligation is upon the agreement of separation. (*Butler* v. *Butler*, 206 App. Div. 214; *Galusha* v. *Galusha*, 116 N. Y. 635.)

The agreement of separation, therefore, is as " instinct with obligation " as the ante-nuptial agreements in the cases above cited. There is no difference in principle. The wife, for a valuable consideration which the law recognizes and which is specified in the agreement, is entitled to the enforcement of the husband's promise to see her provided for after his death and during the balance of her life. Such a compliance with his obligation as the husband here made is not a bounty or a benefaction, but is a transfer for a valuable consideration as provided in subdivision 2 (formerly subdivision 4) of section 220 of the Tax Law (as amd. by Laws of 1922, chap. 430, and Laws of 1925, chap. 143; since amd. by Laws of 1928, chap. 330), and is not in my opinion the subject of a transfer tax.

*Matter of Kidd* (188 N. Y. 274), relied on by the respondent, may appear to be in conflict with the later authorities. The decision there preceded the change in the Tax Law (§ 220, subd. 2, *supra*), which provides that a transfer of property for a valuable consideration is not subject to tax.

As to the taxation of the remainder over to the son of the corpus of the one-third after the wife's death, the question is not wholly free of doubt, but it does seem to me that as to this portion of the residuary, the wife and husband had the right to and did contract for the payment over to this son of the corpus after the wife had obtained the use and benefit of the income during her lifetime. In that aspect his interest did not arise by virtue of the will but arose by the terms of the previous separation agreement.

In *Matter of Schmoll* (*supra*) the ante-nuptial agreement provided that upon the husband's death two-thirds of the estate was to go to the wife and one-third to the children of the marriage. It was conceded in that case that the widow's share of the estate

received by her by virtue of the ante-nuptial agreement was not subject to transfer tax; but as to the shares of the children, they were held taxable by the surrogate despite the concession of the State that the children, although not parties to the ante-nuptial agreement, could enforce its provisions for their benefit. It was said by MERRELL, J., writing for the Appellate Division (p. 441): " There can be no question that as to decedent's estate the two-thirds thereof which his widow received was not subject to taxation, because it was received by her pursuant to the ante-nuptial agreement upon a good and sufficient consideration paid and furnished by her. I think that the transfer to the children was likewise upon a good and sufficient consideration, and that it was entirely proper for the prospective husband and wife not only to agree as to the devolution of their common property upon the death of either, and that the survivor of them should receive two-thirds of said property, but that any children born of their marriage should receive the remainder. In making such agreement the husband acted upon sufficient consideration. Both parents had a natural desire to provide for the prospective offspring of their contemplated union, and it is conceded that the agreement made in behalf of decedent's children is such an agreement as could be enforced in behalf of said children. With this concession I can see no good reason why the share in decedent's property which the children received under and by virtue of the ante-nuptial agreement executed by their parents was not upon consideration. It was in no sense donative or a benefaction. Their claims are in the nature of a debt against the estate and as such are enforcible as any other debt. (*Hegeman* v. *Moon*, 131 N. Y. 462.) The prospective mother has the absolute right, it seems to me, in consideration of her entering the married state with the decedent and in consideration of her investment of her property and separate estate in the common property of the parties, to exact the promise on decedent's part that upon death any children born to their marriage, and in whom she was naturally deeply interested, should receive a share of said common property. The consideration was a valuable one and the share of decedent's estate which the children have received is but the fulfillment of their father's contract. I know of no reason under such circumstances why the amounts thus received by them are subject to taxation under the Transfer Tax Law."

I am unable to distinguish in their material aspects the case cited from the case at bar, in so far as concerns this agreement made for the benefit of the son which, it seems to me, the wife

was entitled to exact as a condition for entering into the separation agreement.

The foregoing views lead me to advise a reversal upon the law of the order in so far as appealed from, with costs to appellants payable out of the estate, and that the proceeding be remitted to the Surrogate's Court of Suffolk county to proceed in accordance herewith.

LAZANSKY, P. J., SEEGER and CARSWELL, JJ., concur; HAGARTY, J., dissents.

Order of the Surrogate's Court of Suffolk county, in so far as appealed from, reversed upon the law, with costs to appellants, payable out of the estate, and proceeding remitted to the Surrogate's Court to proceed in accordance herewith.