In the Matter of the Estate of Isaac R. Thomas, Deceased.

Surrogate's Court, Queens County, February 23, 1932.

*Henry J. Wagner*, for the executor.

*Henry Woog*, for the appellant.

*Harry M. Peyser*, for the State Tax Commission.

HETHERINGTON, S. This is an appeal by Gussie Thomas, former wife of the decedent, from the report of the appraiser and the *pro forma* order assessing the tax entered thereon. In March, 1924, she was awarded a decree of divorce from her husband. A stipulation was entered into on February 15, 1924, between the parties and their attorneys which was incorporated in the decree of divorce and provided that the defendant (decedent) should pay the plaintiff (appellant) alimony at the rate of $3,000 per annum for a period of one year after the entry thereof, and thereafter for the life of the plaintiff at the rate of $2,000 per annum, and deposit in the Harriman National Bank common stock of the Quadri Color Company, Inc., of the par value of $20,000 made out either in the name of the plaintiff or the bank as trustee, as security for the payment of the stipulated alimony. In the event of the defendant predeceasing the plaintiff, the stock was to become her absolute property, and if she died before him, it was to be returned to the defendant, free from any claim on the part of the representative of the plaintiff. At any time after one year from the granting of the decree, the defendant reserved the privilege of paying to the plaintiff the sum of $20,000 " in full settlement, satisfaction and discharge of all claims for alimony," and upon proof of such payment the stock was to be returned to him. Upon payment of the alimony of $3,000 for the first year and deposit of the security as aforesaid by the defendant, the plaintiff agreed to execute a release of dower. In June, 1924, a supplemental agreement was entered into which provided for the deposit of 200 shares of stock, indorsed in blank by the defendant with the bank, and contained other provisions carrying out the terms of the stipulation. The decedent died on January 21, 1930, leaving a last will and testament which was admitted to probate on March 25, 1930. The will neither refers to the aforesaid stipulation or agreement, nor does it make mention of any provision for the appellant. The appraiser held that the transfer of the stock was a taxable transfer, and an order was made assessing a tax against the appellant based upon the value of the stock as determined by him.

If the transfer of the stock is taxable at all, it must be by virtue of the provisions of section 220 of the Tax Law (as amd. by Laws of 1928, chap. 330), the material portions of which are as follows: " A tax shall be and is hereby imposed upon the transfer of any property real or personal, or of any interest therein or income therefrom in trust or otherwise, to persons or corporations in the following cases, * * *

" 1. When the transfer is by will or by the intestate laws of this

state from any person dying seized or possessed thereof while a resident of the state.

" 2. When the transfer is made by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor, or donor or intended to take effect in possession or enjoyment at or after such death, * * *. If any one of the transfers mentioned in this subdivision is made for a valuable consideration, the portion of the transfer for which the grantor or vendor receives equivalent monetary value is not taxable, but the remaining portion thereof is taxable."

Subdivision 1 is not applicable for the transfer here was neither one by will or intestacy. Is it taxable under subdivision 2? This question can only be answered after examining and interpreting the instruments under which the transfer was made. The stipulation embraced in the divorce decree and the supplemental agreement constituted a contract between the appellant and the decedent, under which the latter agreed to pay a fixed sum as alimony during the life of his former wife, and as security for the payment of the same to deposit with a third party the 200 shares of stock, which was to become the absolute property of the appellant in the event of the decedent predeceasing her. The legal effect of the contract was that the parties had commuted or liquidated the future alimony at the value of the stock or its stipulated monetary value. The reservation entitling the decedent to withdraw the stock and pay the appellant the sum of $20,000 " in full settlement, satisfaction and discharge of all claims for alimony " estopped the appellant from making any claim against his estate. This stipulation coupled with the execution by her of a release of dower discloses that the agreement was supported by a valuable consideration. Prior to the insertion in the statute of the provisions relating to " a valuable consideration " and to " equivalent monetary value " for property transferred by deed, grant, bargain, sale or gift, it had been held that the Legislature did not intend that transfers resting upon a valuable and adequate consideration should be taxable, and that the aim of the statute was to tax only such transfers as were of their nature and character instruments or sources of bounty or benefaction. (*Matter of Orvis*, 223 N. Y. 1; *Matter of Vanderbilt*, 184 App. Div. 661; affd., 226 N. Y. 638.) The transfer was in no sense donative or a benefaction, but on the other hand was based upon a good and sufficient consideration paid and furnished by the appellant, and consequently must be held to be non-taxable. Neither do I regard the transfer as one made " in contemplation of death " or " intended to take effect in possession or enjoyment at or after * * * death." The appellant's right to the stock

arose out of the contract, and although it did not become enforcible until decedent's death, her right to it had been previously created. The contract became binding and took effect at once on the date of its execution. It was irrevocable, and while the decedent had a right to withdraw the stock, he could only do so upon substituting $20,000 in its place. Until he made the substitution he was not free to sell or dispose of it, and as was said in *Matter of Fieux* (241 N. Y. 277), " death, * * * created no rights; it merely marked the time when previously created rights and obligations could be enforced." In *Matter of Baker* (83 App. Div. 530; affd., 178 N. Y. 575) the parties entered into an antenuptial contract in writing, in which, among other things, the decedent agreed to make provision by his last will and testament for the payment to his intended wife from his estate of the sum of $20,000. After his death she accepted the proceeds of a life policy of $10,000 which had been transferred to her by her husband prior to his death and the remaining sum of $10,000 was subsequently paid to her from the estate. The State Comptroller contended that this latter payment was subject to a transfer tax, and the court in holding otherwise, per ADAMS, P. J., wrote (at pp. 532 and 533) as follows: " It will doubtless be conceded that the respondent's claim is not one which is dependent for its validity upon a deed or grant of any kind, and, furthermore, that it is not testamentary in its character, although it did not become due and payable until after the death of her husband. It was simply the outgrowth of a contract entered into between the decedent and the claimant, which was founded upon a perfectly good and valuable consideration, and one which is regarded with favor by the law and will generally be enforced in accordance with the intention of the parties * * * It would seem to follow, therefore, that a claim arising from such a source is in the nature of a debt against the estate and as such enforcible like any other debt * * *; and if this is its character we do not see why it should be subject to taxation under the Transfer Tax Law any more than if it were a debt represented by a bond or note. * * * But it is said that the contract was entered into in contemplation of and was not ' intended to take effect in possession or enjoyment ' until after the death of the obligor. This, in a certain sense, is doubtless true, as it would be of any other form of debt the payment of which was deferred until after the death of the debtor, but this does not affect its validity nor alter its character."

This case and others like it (*Matter of Miller*, 77 App. Div. 473; *Matter of Roeck*, 111 Misc. 509; *Matter of Roberts*, 128 id. 258) seem to me to be decisive of the question here presented, and compel me to hold that the transfer is not taxable. There is

nothing in *Matter of Howell* (255 N. Y. 211) in conflict with this view, for in that case the court held that the decedent did not contract to convey, but on the other hand contracted to make a will in favor of his wife and adopted son. In other words, the transfer was by will and not by contract. It was further pointed out that there was no mutual recognition of the existence of any specific debt and that each of the parties was free, in the absence of fraud, to consume his entire substance in living expenses or by speculation. Here nothing passed by will. A definite obligation was created by contract and the rights of the parties became fixed at the time of its execution. The appeal is sustained and in view of this determination, I deem it unnecessary to determine whether or not the appraiser correctly valued the stock.

Submit order on notice modifying the order fixing tax by striking out the provision taxing the value of the stock in question against Gussie Thomas.